IN THE UNITED STATES DISCTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **Communications Workers** § | |
| **of America, AFL-CIO,** § | |
| **Plaintiff** § | |
| § | **Civil Action No.** |
| vs. § | |
| § | |
| **Dex Media, Inc. d/b/a Thryv, Inc.,** § | |
| **Defendant** § | |

## PLAINTIFF'S COMPLAINT

This is an action pursuant to Section 301 of the Labor-Management Relations Act, 29 U.S.C. §185, to vacate a labor arbitration award that was rendered in violation of due process and fundamental fairness, that does not draw its essence from the contract, that was in excess of the arbitrator's jurisdiction because it rewrote the contract, and that reflects the arbitrator's own brand of industrial justice instead of fidelity to the contract.

### Jurisdiction

1. The Court's subject matter jurisdiction over this action is founded upon Section 301 of the Labor-Management Relations Act, 29 U.S.C. §185.

### Venue

2. Venue is proper in this judicial district and division under 28 U.S.C. §1391(a)(1) in that the Defendant corporation is subject to this Court's personal jurisdiction and under 28 U.S.C. §1391(a)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and division.

## Parties

3. The Plaintiff is Communications Workers of America, AFL-CIO ("CWA" or "Union"), a labor organization that has the capacity to sue and be sued.

4. The Defendant is Dex Media, Inc. ("Dex"), which according to the records of the Texas Secretary of State does business in Texas under the assumed name of Thryv, Inc. ("Thryv", "Company", or "Defendant"). The Defendant may be served in this action by service upon its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

5. At pertinent times Thryv was known by a previous name of Dex-YP. The reference "Company" will refer herein to Defendant Dex Media, Inc. d/b/a Thryv, Inc.; Dex-YP; and any predecessor employer of the collective bargaining unit referred to herein as may be applicable at the time of any event, transaction, or fact to which reference is made. More specifically, as of January 2014, CWA and an employer known as YP Holdings, LLC were parties to a collective bargaining agreement covering the employee bargaining unit out of which this controversy arose. In or about June 2017, YP Holdings, LLC was acquired by Dex Media, Inc., which adopted Dex-YP as a new name under which it conducted business. On October 5, 2018, Dex Media, Inc. filed an assumed name certificate with the Texas Secretary of State designating Thryv as an assumed name. On February 25, 2020, Dex filed an assumed name certificate with the Texas Secretary of State designating Thryv, Inc. as an assumed name.

## Operative Transactions and Facts

6. In or about January 2014, YP Holdings, LLC terminated the employment of

George Animadu, who was a member of the collective bargaining unit represented by CWA.

7. The collective bargaining agreement prohibited the employer from terminating Mr. Animadu's employment without just cause.

8. The collective bargaining agreement contained a grievance procedure culminating in binding arbitration before a neutral arbitrator.

9. The Union filed a grievance under the contract contesting the termination of Mr. Animadu's employment.

10. YP Holdings, LLC took over a year to submit a written answer to the Union denying the grievance.

11. CWA appealed the grievance to the second step of the grievance procedure in a timely manner under the contract.

12. YP Holdings, LLC failed to respond to the grievance at the second step of the grievance procedure in a timely manner under the contractual requirements. In particular, YP Holdings, LLC failed and refused to meet with the Union to discuss the grievance at the second step of the grievance procedure.

13. The second step of the grievance procedure was the highest level of the grievance procedure before resorting to arbitration. As such, a labor-management meeting at the second step of the grievance procedure is valuable as the last meaningful formal opportunity for collaborative mutual settlement before the parties' positions harden further by moving into the adversary posture of contested arbitration.

14. The Union and Mr. Animadu were entitled to a meeting with the Company at

the second step of the grievance procedure under the contract in order to present the matter to a higher management official with the authority to grant or settle the grievance, in order to exchange and discuss the parties' versions of the facts and issues in contention, and in order to attempt to resolve the matter before seeking recourse through arbitration. Binding arbitration before a neutral arbitrator whose fees and costs must be paid, also frequently involving representation by outside legal counsel, is a costly process for both the employer and the Union.

15. The Company's failure and refusal to conduct a grievance meeting at the second step continued for a protracted period of time.

16. Upon its acquisition of YP Holdings, LLC in or about June 2017, Dex Media, Inc./Dex-YP acknowledged that it was a successor to YP Holdings, LLC. Dex-YP expressly assumed the existing collective bargaining agreement with CWA. By operation of law and contract the assumption of the contract included the assumption of existing obligations and liabilities under the contract, including the obligation to respond to the Animadu grievance and all potential liabilities appurtenant to the grievance.

17. Dex-YP continued the failure and refusal to conduct a second step grievance meeting on the Animadu termination grievance.

18. In October 2017 the Union, its patience exhausted by the protracted unreasonable failure and refusal of the Company to meet on the grievance at the second step, filed an unfair labor practice charge with the National Labor Relations Board against Dex-YP over the continuing failure and refusal to meet. The Animadu termination grievance was one of over 35 grievances in which YP Holdings, LLC and

Dex-YP had continually failed and refused to hold grievance meetings, all of which were encompassed by CWA's unfair labor practice charge.

19. Region 16 of the National Labor Relations Board duly and thoroughly investigated the unfair labor practice charge.

20. The Regional Director of NLRB Region 16, pursuant to his statutory and regulatory responsibility and authority, found sufficient merit in the charge to warrant the issuance of a formal complaint against Dex-YP. Accordingly, on August 8, 2018, the Regional Director on behalf of the NLRB General Counsel issued and served on Dex-YP a formal complaint alleging the commission of unfair labor practices affecting commerce.

21. Dex-YP agreed to resolve the complaint without the necessity of further litigation.  On August 28, 2018 the Regional Director approved a settlement between the NLRB and Dex-YP by which the Company agreed to meet with CWA on the affected grievances.

22. In June 2019, the employees of the collective bargaining unit from which Mr. Animadu was discharged exercised their statutory right by majority vote in an election conducted by the NLRB to decertify CWA as their exclusive representative and bargaining agent. This action extinguished the prospective application of collective bargaining and contractual rights. However, by the operation of law Dex's obligation to observe the Union's and Mr. Animadu's pre-existing vested contractual rights to pursue the existing grievance and to require just cause for Mr. Animadu's discharge continued in force and effect. The Company does not dispute that the collective bargaining

agreement that covers Mr. Animadu's discharge is applicable to the arbitration at issue in this action.

23. In or about November 2019, Thryv informed CWA unequivocally that it would not provide the Union a written answer to the Animadu grievance and that CWA should proceed to arbitration if it wished to do so.

24. On or about December 16, 2019, CWA duly served notice on the Company of its intent to arbitrate the Animadu grievance pursuant to the arbitration clause of the collective bargaining agreement that was in effect at the time of Mr. Animadu's discharge and CWA's initiation of the grievance.

25. Under the arbitration clause, the American Arbitration Association ("AAA") administers arbitrations and the Labor Arbitration Rules of the AAA apply to the selection of the arbitrator, the scheduling of the arbitration hearing, and the conduct of all proceedings.

26. Through the procedures of the AAA the parties selected Mattye Gandel as the arbitrator for the Animadu termination case.

27. On March 11, 2020, the AAA issued a notice of hearing that the Animadu case was scheduled to be heard by Arbitrator Gandel on August 18, 2020. The notice advised the parties: "Please attend promptly with your witnesses and be prepared to present your proofs." Before the AAA's issuance of the notice of hearing the Employer, the Union, and the Arbitrator had agreed on the hearing date through discussions coordinated by the AAA.

28. The Arbitrator scheduled a conference call in June 2020 with the parties'

respective counsel to discuss prehearing issues, for example procedures for a videoconference hearing in light of the Covid-19 pandemic.

29. During the conference call Thryv's counsel contended that the grievance was barred from arbitration by laches and should be dismissed.

33. In response during the conference call CWA's counsel asserted that the grievance was not barred by laches and that CWA was entitled to proceed with the scheduled hearing. Arbitrator Gandel suggested that the parties submit prehearing briefing on the issue. CWA's counsel consented to prehearing briefing on Thryv's laches claim but contended that in any event the scheduled hearing should proceed on all issues. CWA did not consent to the arbitrator deciding the arbitrability dispute raised by Thryv on briefs alone without an evidentiary hearing.

34. The applicable collective bargaining agreement did not include or incorporate the equitable notion of laches.

35. Per the briefing schedule set by Arbitrator Gandel, Thryv as the moving party on its laches claim submitted its brief first, and then the Union responded to Thryv's arguments.

36. Thryv's brief did not contend that CWA had failed to meet any express time limit of the contractual grievance procedure. Instead, Thryv argued that the Union was barred by laches due to the overall passage of time from the initiation of the grievance at the first step to the appeal to arbitration.

37. The applicable contract does not contain any time limit that the Union must meet from the first grievance step to arbitration.

38. CWA met every express mandatory contractual time limit from the initiation of the grievance at the first step to arbitration. As detailed above, the passage of time was primarily caused by the Company's failure and refusal to respond to the grievance.

39. In its response brief to Thryv's prehearing brief, CWA responded to every argument and claim of which it was placed on notice by Thryv's brief. CWA also reiterated its request for a hearing.

40. On August 3, 2020, Arbitrator Gandel issued a decision dismissing the grievance based on laches.

41. This decision was rendered without the benefit of the hearing CWA had repeatedly requested. In this decision the arbitrator made material fact findings on the basis of unsworn assertions by Thryv's lawyer that were not subject to oath and the right of cross-examination. The practices of evidentiary hearings, sworn testimony, and cross examination are customary under AAA Rules and were enshrined in decades of arbitration practice under the applicable arbitration clause which Dex-YP assumed and adopted.

42. In addition Arbitrator Gandel reached out and fabricated contract interpretation theories that Thryv did not advocate in its laches brief. Arbitrator Gandel relied upon these fabricated contract interpretation theories both as a substantial basis for her conclusion that laches barred arbitration of the grievance and as independent grounds for dismissing the grievance. CWA had not addressed such contract construction theories in its response to the Company's laches brief because the

Company's brief did not place it on notice that such theories were in issue or would be under consideration.

43. Crucially, Arbitrator Gandel did not provide fair notice to CWA that the contract construction theories she adopted were being considered by her. This was despite Rule 25 of the AAA Labor Arbitration Rules stating, "The arbitrator…may …direct the parties to focus their presentations on issues the decision on which could dispose of all or part of the case." Thus CWA was denied a fair and meaningful opportunity to respond to such theories.

44. The contract construction theories adopted by Arbitrator Gandel are directly contrary to decades of mutually agreed union and employer understandings, practices, and applications of contractual meaning covering the bargaining unit from which Mr. Animadu was discharged, which such employers, including Dex-YP, had agreed to, understood, applied, and practiced for at least 36 years. CWA did not proffer evidence of the history of these solidly embedded mutual interpretations of the grievance procedure language because it was not on fair notice that Arbitrator Gandel's new interpretations could be under consideration.

## Contentions of Law

45. By denying CWA fair and meaningful notice and opportunity to respond to the contract construction theories that she reached out and adopted, Arbitrator Gandel denied CWA and George Animadu due process and fundamental fairness and committed significant procedural aberration. Although under the law of the Fifth Circuit the Federal Arbitration Act does not govern this lawsuit, Fifth Circuit jurisprudence allows Courts in

LMRA Section 301 lawsuits to look to the FAA for guidance. *Int'l Chemical Workers Union v. Columbian Chemicals Co.*, 331 F.3d 491 (5th Cir. 2003). Arbitrator Gandel's misconduct in denying CWA and Mr. Animadu fundamental fairness in this manner would violate the FAA at 9 U.S.C. §10(a) (3).

46. By engaging in material fact findings on the basis of unsworn assertions by Thryv's lawyer that were not subject to oath and the right of cross-examination in spite of CWA's repeated requests for a hearing, Arbitrator Gandel denied CWA and George Animadu due process and fundamental fairness and committed significant procedural aberration. Although under the law of the Fifth Circuit the Federal Arbitration Act does not govern this lawsuit, Fifth Circuit jurisprudence allows Courts in LMRA Section 301 lawsuits to look to the FAA for guidance. *Int'l Chem. Workers Union v. Columbian Chemicals Co., supra.* Arbitrator Gandel's misconduct in denying CWA and Mr. Animadu fundamental fairness in this manner would violate the FAA at 9 U.S.C. §10(a) (3).

47. By reaching out and fabricating new contractual interpretations that are directly contrary to decades of mutually agreed union and employer understandings, practices, and applications of contractual meaning, with CWA not on fair notice of a need to enlighten the arbitrator as to such history, and without the benefit of the evidentiary hearing the Union repeatedly requested, Arbitrator Gandel exceeded her contractual jurisdiction by rewriting the contract.

48. By applying the equitable theory of laches to find fatal delay from the initiation of the grievance to the appeal to arbitration despite the contract not containing any overall time limit from the first grievance step to arbitration, Arbitrator

Gandel imposed her own notion of fairness not founded on the contract and thus exceeded her jurisdiction by dispensing her own brand of industrial justice.

49. By reaching out and fabricating new contractual interpretations that are directly contrary to decades of mutually agreed union and employer understandings, practices, and applications of contractual meaning; upon which established contractual meanings CWA justifiably relied in pursuing arbitration of the Animadu grievance and was not on notice such established meanings might be in jeopardy, Arbitrator Gandel denied CWA and George Animadu due process and fundamental fairness and committed significant procedural aberration. Although under the law of the Fifth Circuit the Federal Arbitration Act does not govern this lawsuit, Fifth Circuit jurisprudence allows Courts in LMRA Section 301 lawsuits to look to the FAA for guidance. *Int'l Chem. Workers Union v. Columbian Chemicals Co., supra.* Arbitrator Gandel's conduct in denying CWA and Mr. Animadu fundamental fairness in this manner would violate the FAA at 9 U.S.C. §10(a)(3).

50. By reaching out and fabricating new contractual interpretations that are directly contrary to decades of mutually agreed union and employer understandings, practices, and applications of contractual meaning without knowledge of such history of established contractual meanings, and with the Union not on fair notice of a need to inform the arbitrator about such established meanings and without the benefit of the evidentiary hearing the Union repeatedly requested, Arbitrator Gandel issued a decision that does not draw its essence from the contract.

51. By dismissing the Animadu grievance on the basis of contractual

interpretation theories that were not submitted to her for resolution, Arbitrator Gandel exceeded her jurisdiction under the contract and dispensed her own brand of industrial justice.

52. By engaging in material fact findings on the basis of unsworn assertions by Thryv's lawyer that were not subject to oath and the right of cross-examination in spite of CWA's repeated requests for a hearing, Arbitrator Gandel demonstrated unacceptable bias and partiality for the Employer, thus denying CWA and George Animadu due process and fundamental fairness and committed significant misconduct. Although under the law of the Fifth Circuit the Federal Arbitration Act does not govern this lawsuit, Fifth Circuit jurisprudence allows Courts in LMRA Section 301 lawsuits to look to the FAA for guidance. *Int'l Chem. Workers Union v. Columbian Chemicals Co., supra.* Arbitrator Gandel's conduct in denying CWA and Mr. Animadu fundamental fairness in this manner would constitute misconduct in violation of the FAA at 9 U.S.C. §10(a) (3). In addition such misconduct violates the Code of Professional Responsibility for Arbitrators of Labor Management Disputes, Section 1.C.a., "An arbitrator shall not engage in conduct that would compromise or appear to compromise the arbitrator's impartiality", and Section 5.A., "An arbitrator must provide a fair and adequate hearing which assures that both parties have sufficient opportunity to present their respective evidence and argument."

53. By denying CWA fair and meaningful notice and opportunity to respond to the contract construction theories she adopted to the detriment of CWA and Mr. Animadu, Arbitrator Gandel demonstrated unacceptable bias and partiality for the

Employer, thus denying CWA and George Animadu due process and fundamental fairness. Arbitrator Gandel could not have been wholly unmindful and oblivious to the absence of notice to the Union that such theories might be under consideration by her. Although under the law of the Fifth Circuit the Federal Arbitration Act does not govern this lawsuit, Fifth Circuit jurisprudence allows Courts in LMRA Section 301 lawsuits to look to the FAA for guidance. *Int'l Chem. Workers Union v. Columbian Chemicals Co., supra.* Arbitrator Gandel's conduct in denying CWA and Mr. Animadu fundamental fairness in this manner would constitute misconduct in violation the FAA at 9 U.S.C. §10(a) (3). In addition such misconduct violates the Code of Professional Responsibility for Arbitrators of Labor Management Disputes, Section 1.C.a., "An arbitrator shall not engage in conduct that would compromise or appear to compromise the arbitrator's impartiality", and Section 5.A., "An arbitrator must provide a fair and adequate hearing which assures that both parties have sufficient opportunity to present their respective evidence and argument."

54. By denying CWA's repeated requests for an evidentiary hearing, Arbitrator Gandel violated CWA's and Mr. Animadu's rights to due process and fundamental fairness and committed significant procedural aberration. Although under the law of the Fifth Circuit the Federal Arbitration Act does not govern this lawsuit, Fifth Circuit jurisprudence allows Courts in LMRA Section 301 lawsuits to look to the FAA for guidance. *Int'l Chem. Workers Union v. Columbian Chemicals Co., supra.* Arbitrator Gandel's conduct in denying CWA and Mr. Animadu due process and fundamental

fairness by denying a hearing would constitute misconduct in violation of the FAA at 9 U.S.C. §10(a) (3).

55. By denying CWA's repeated requests for an evidentiary hearing, Arbitrator Gandel violated Rule 25 of the AAA Labor Arbitration Rules which are expressly incorporated into the contract and committed procedural aberration. Rule 25 states, "The arbitrator may vary the normal procedure under which the initiating party first presents its claim, but in any case shall afford full and equal opportunity to all parties for the presentation of relevant proofs."

56. In all respects set forth in paragraphs 43-53 above, Arbitrator Gandel impermissibly dispensed her own brand of industrial justice.

## Relief Demanded

57. For all the above and foregoing reasons, Plaintiff CWA demands that Defendant Dex Media, Inc. d/b/a Thryv, Inc. be summoned to appear and answer herein; and that upon trial of this controversy the Court vacate the arbitration award issued by Arbitrator Mattye Gandel dismissing the grievance concerning the discharge of George Animadu and order such grievance to proceed to an evidentiary hearing on all issues under the arbitration clause of the collective bargaining agreement in effect at the time of Mr. Animadu's discharge and the Labor Arbitration Rules of the American Arbitration Association as incorporated into the contract. Plaintiff submits that the Court should order remand to a different arbitrator to be selected pursuant to the arbitrator selection procedures administered by the AAA and incorporated into the contract, as an exception to the remedial concept for remand to the same arbitrator enunciated in

*Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504 (2001), due to the magnitude of Arbitrator Gandel's misconduct and manifest partiality. CWA further submits there is significant risk of Arbitrator Gandel holding bias against the Union due to CWA's allegations of misconduct on her part in this suit.

Respectfully submitted,

DAVID VAN OS & ASSOCIATES, P.C.
David Van Os
Texas Bar No. 20450700
Email dvo@vanoslaw.com
Pandemic work-from-home tel. #210-332-7070
Matthew Holder
Texas Bar No. 24026937
Email matt@vanoslaw.com
Pandemic work-from-home tel. #210-218-3331
8626 Tesoro Drive, Suite 510
San Antonio, Tex. 78217
Tel. 210-824-2653
Fax 210-824-3333

TANNER & ASSOCIATES, P.C.
Rod Tanner
Texas Bar No. 19637500
Email rtanner@rodtannerlaw.com
6300 Ridglea Place, Suite 407
Fort Worth, TX 76116-5706
Tel. (817) 377-8833
Fax: (817) 377-1136

COUNSEL FOR PLAINTIFF,
COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO