IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COMMUNICATIONS WORKERS OF AMERICA AFL-CIO, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:20-CV-3295-L** |
| DEX MEDIA INC., | § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are Defendant's Motion for Summary Judgment (Doc. 20) and Plaintiff's Motion for Summary Judgment (Doc. 22), both of which were filed May 14, 2021. Plaintiff seeks to vacate the underlying arbitration award while Defendant seeks to confirm the award. After considering the motions, briefs, evidence, pleadings, and applicable legal standard for reviewing labor arbitration awards, the court **grants** Defendant's Motion for Summary Judgment (Doc. 20) and request to confirm the arbitration award; and **denies** Plaintiff's Motion for Summary Judgment (Doc. 22) and request to vacate the arbitration award.

**I.     Factual and Procedural Background**

On August 3, 2020, Arbitrator Mattye M. Gandel issued an arbitration award in favor of Dex Media, Inc. ("Defendant" or "Dex Media") in American Arbitration Association Case No. 01-19-0004-5336. This action by Communications Workers of America AFL-CIO ("Plaintiff," "CWA," or "Union") followed on October 30, 2020. Pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, the CWA seeks to vacate the August 3, 2020 arbitrator's decision dismissing the grievance brought by it regarding the termination of Union member George Animadu ("Mr. Animadu") based on Dex Media, Inc.'s ("Defendant" or "Dex

Media") laches claim. Plaintiff contends that the arbitrator's award should be vacated because it: (1) was "rendered in violation of due process and fundamental fairness; (2) fails to "draw its essence from the contract"; (3) exceeds the arbitrator's jurisdiction because she rewrote the contract; and (4) reflects the "arbitrator's own brand of industrial justice instead of fidelity to the contract." Pl.'s Compl. 1. Both parties moved for summary judgment on May 14, 2021, and, in support of their respective motions, they rely on a joint appendix of evidence. On February 28, 2020, Defendant filed its Answer and Counterclaim, seeking to confirm the arbitration award, as well as an award of attorney's fees and costs.

Both parties seek summary judgment on their respective requests to confirm and vacate the arbitrator's decision, as well as the opposing party's claims for relief. For the reasons herein explained, the court determines that the grounds relied on by Plaintiff do not support its request to vacate the arbitrator's decision, and that Defendant is entitled to have the arbitrator's award that was entered in its favor confirmed.

## II.     Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make

credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude

the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. Standard for Reviewing Labor Arbitration Awards

"A court's review of arbitral awards interpreting labor agreements is 'exceedingly deferential.'" *Delek Ref., Ltd. v. Local 202, United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFLCIO*, 891 F.3d 566, 570 (5th Cir. 2018) (citations omitted). Consequently, even if a court believes that "the arbitrator seriously erred in [her] fact finding or contract interpretation," it "will uphold a decision that is rationally inferable from the purpose of the CBA [Collective Bargaining Agreement]." *Id.* (citations omitted). The standard for reviewing a labor arbitration award is so deferential that the Fifth Circuit in *Delek* noted it had only previously vacated awards in "rare situations." *Id.* While the court "interprets that essence standard 'expansively,'" this does not mean that an arbitrator's power is without limit. *Id.* (citations omitted). The deference afforded to an arbitrator's decision "does not extend to those instances when the arbitrator exceeds the jurisdictional limits drawn in a CBA, . . . or acts contrary to its express provisions[.]" *Id.* (citations omitted). Thus, "[a]n arbitrator cannot, for example, ignore the plain language of a contract." *Id.* (citations omitted). "[W]hen reviewing a case involving a CBA and arising under Section 301, courts are not obligated to rely on the FAA [Federal Arbitration Act] but may rely on it for guidance in reviewing an arbitration award." *International Chem. Workers Union v. Columbian Chem. Co.*, 331 F.3d 491, 494 (5th Cir. 2003) (citing *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 41 n.9 (1987)).

IV.     Analysis

Whether the arbitrator's decision should be vacated or confirmed turns on the resolution of the issues raised and briefed by the parties in conjunction with Plaintiff's summary judgment motion. The court's analysis, therefore, focuses on these issues. In support of its summary judgment motion, Plaintiff argues that: (1) the arbitrator rewrote the contract and ignored the CBA's express language; (2) it was denied due process and fundamental fairness in the arbitration proceedings; and (3) decisions of arbitrators in other similar grievances initiated by it support its contention that the arbitrator's decision in this case based on laches should be vacated.

A. Arbitrator's Interpretation of the CBA

Plaintiff contends that the arbitrator rewrote the CBA and ignored the CBA's express language in concluding that its grievance was barred by laches because the contract does not include a mandatory period of two weeks or any other deadline by which the Union must escalate a grievance or risk forfeiting it. In this regard, Plaintiff points to the following relevant language in section 7 of the CBA, which it contends allows it to proceed to the next step of the grievance process after two weeks if there is no response, but does not require it to do so:

> Section 7. Meetings at each level of the grievance procedure shall be arranged promptly. If, due to the Company's actions, a mutually agreeable meeting date is not arranged within two (2) weeks of either the Company's receipt of the initial notification or the appeal of the grievance, the Union may present its original grievance to the next higher level of the formal grievance procedure. (JA 27, emphasis added).

Pl.'s Mot. 4; Pl.'s Reply 4.

Defendant responds that the arbitrator's decision makes clear that "she read the provisions of the CBA and reached a reasoned conclusion about both the Union's discretion under Section 7 of Article XX and the time within which the Union must exercise its right to submit a grievance to arbitration." Def.'s Resp. (citing App. 245-54). Defendant contends that the Union's mere

disagreement with the arbitrator's interpretation of the CBA does not mean that she disregarded or rewrote it, and the cases relied on by the Union in which the arbitrator ignored express provisions of the contract are distinguishable because, while the Union argues that the arbitrator "ignored explicit language of the CBA," it fails to identify the precise contractual language alleged to have been ignored by the arbitrator. Def.'s Resp. 5 (quoting Pl.'s Mot. 16).

Defendant contends that, in actuality, Plaintiff's concern is that the arbitrator "insert[ed] language into the CBA by finding that the Union 'must' escalate its grievance to the next step if no response is provided by [Defendant]." Def.'s Resp. 5 (quoting Pl.'s Mot. 16). Defendant argues that this assertion by Plaintiff misstates the arbitrator's award, which did not conclude that the Union "must" escalate its grievance to the next step, but instead concluded as follows that the Union had the option to do so: "The parties did not mutually agree to meet within two weeks of [Defendant's] inaction and, therefore, the Union had the option to move the grievance to the next higher level and to proceed to arbitration at that time." Def.'s Resp. 5 (quoting App. 250).

As Defendant correctly notes, the arbitrator acknowledged the Union's contention regarding the meaning and import of the inclusion of the word "may" in section 7, but she disagreed that this provided the Union with an open-ended or indefinite period of time to appeal or move to the next level in the grievance procedure. App. 249-50. Instead, she interpreted section 7 as giving the Union the right to appeal as opposed to mandating it to appeal, but she disagreed that the language in this section allowed it to appeal on "whatever date in the future it decides to appeal," as such an interpretation is inconsistent with having agreed upon grievance procedures that facilitate the quick resolution of disputes. *Id.* at 250. The arbitrator further reasoned that the CBA gave either party the right to submit a grievance to arbitration within 60 days after completion of the Formal Grievance procedure.

**Memorandum Opinion and Order – Page 6**

Applying these provisions to the facts at hand, the arbitrator determined that it was undisputed that Defendant did not respond to the Union's second level grievance and had the option and right at that time in August or September 2015 to initiate an arbitration, but, instead of doing so, the Union opted to wait several years until 2019 to file the arbitration. The arbitrator, therefore, concluded that Defendant was "within its right to claim laches" and denied the grievance, reasoning that: "[t]he Union had the opportunity at the conclusion of the 'Formal Grievance' procedure to proceed to the next step but it did not follow the clear language of the Agreement and unreasonably delayed the process supporting the Company's claim that the matter should not proceed to its merits." *Id.* at 254.

This decision by the arbitrator is rationally inferable from the language and purpose of the CBA. *See Delek*, 891 F.3d at 570 (citations omitted). That the Union disagrees agrees with the arbitrator's interpretation of the CBA does mean that she rewrote it or ignored the plain language of the contract. To the contrary, she specifically identifies the provisions of the contract that she relied upon in forming her opinion. Accordingly, the Union is not entitled to have the arbitrator's decision vacated on this ground.

**B. Due Process and Fundamental Fairness**

The Union next contends that the arbitration award in Defendant's favor should be vacated because it was denied due process and fundamental fairness. Based on Seventh and Ninth Circuit authority, the Union argues that the arbitrator was required to provide a fundamentally fair hearing, which it defines as a hearing that "meets the 'minimal requirements of fairness— adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." Pl.'s Mot. 19 (quoting *Sunshine Mining Co. v. United Steelworkers*, 823 F.2d 1289, 1295 (9th Cir. 1987)). According to Plaintiff, the standard for fundamental fairness in arbitration proceedings enunciated by the Ninth

Circuit in *Sunshine Mining* and the Seventh Circuit in *Generica Ltd. v. Pharmaceutical Basics*, 125 F.3d 1123, 1129-30 (7th Cir. 1997), was adopted by the Fifth Circuit in *Karaha Bodas L.L.C. v. Perushan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 299 n.67 (5th Cir. 2004).

As evidence that it was denied due process and fundamental fairness, Plaintiff points to a single statement at the beginning of the arbitration award: "The parties agreed that the Arbitrator would hear the procedural issue through briefs and reply briefs before determining if the issue should proceed on the merits." Pl.'s Mot. 19. Plaintiff contends that this statement is "either fundamentally misleading or a palpable and willful misrepresentation" of its position. *Id.* In addition, Plaintiff argues that this statement "strongly implies that both parties agreed to dispense with an evidentiary hearing on [Defendant's] laches claim," even though it had made clear in its written submission its position that: (1) Defendant should be required to put on evidence of prejudice in support of its laches claim (evidence to support Defendant's "claims of prejudice based on its inability to find witnesses or documents" due to the passage of time) ; and (2) the case should proceed to a hearing on all issues, including laches. *Id.* Plaintiff asserts that, even if this is not evidence of a due process violation or fundamental unfairness, the arbitrator's decision to proceed without a hearing and decide the parties' claims based on their written submissions is evidence of "misconduct by [the arbitrator] or as least a basic lack of impartiality." *Id.*

Defendant responds that: (1) the Union had adequate notice of the issues before the arbitrator; (2) due process does not necessitate an evidentiary hearing and the processes ordered by the arbitrator comported with due process; and (3) the Union has never refuted the position taken by Defendant that it suffered prejudice as a result of the Union's delay in filing the arbitration. Regarding the third argument, Defendant asserts:

**Memorandum Opinion and Order – Page 8**

> The Arbitrator relied upon a plain interpretation of the contract and her conclusion was [] reached notwithstanding her findings that there was no dispute of fact that the Company had been prejudiced by the Union's delay.
>
> Moreover, the Arbitrator's finding is correct. An arbitrator can reasonably conclude that whe[n] a union delays bringing a grievance to arbitration for six years, a company will suffer some prejudice as managers depart and the company changes hands. But here there was nothing introduced by the Union that tended to dispute the Company's position that it was prejudiced by the Union's delay. Although the Union suggested that the Company should be required to put on evidence at a hearing about the prejudice it suffered, the Union proffered nothing to controvert the Company's position. It put forth no evidence that the Company had a trove of documents at its disposal relating to Mr. Animadu's termination. The Union submitted nothing showing that any manager who was involved in Mr. Animadu's termination was available to testify at arbitration six years after the fact. And while the arbitration proceedings that took place subsequent to Arbitrator Gandel's award are irrelevant to the issues before the Court, they demonstrate that the Union actually has nothing to controvert the Company's position. At the *Jones* and *Moreau* [arbitration hearings], the Union introduced nothing to controvert testimony offered by the Company that it could not track down any witnesses and had few documents relevant to the four grievances from 2014 and 2015 that the Union now presses.
>
> The Union's position is theoretical. It assumes incorrectly that the Arbitrator's finding that the Company had few documents and no witnesses was integral to her decision and then implies that it would have been able to controvert the Company's position. Yet it points to no evidence in any of the companion proceedings that disputed the prejudice that the Company suffered. It points to no available witnesses and no wealth of relevant documents that the parties had overlooked. And the Union's arbitration brief fails to even suggest that it would present evidence at a hearing or put forth anything to disprove the Company's position. It complains only that the Company should be required to prove prejudice at a hearing.
>
> The Union *would* have this Court ignore what the Arbitrator did not ignore. The Union sought to arbitrate Mr. Animadu's discharge six years after it occurred. The Arbitrator's pointing out that the Union had introduced no evidence to dispute the prejudice caused by the passage of six years from Animadu's termination was reasonable and comported with due process.

Def.'s Resp. 12-13 (footnotes and citations omitted).

It goes without saying that Seventh and Ninth Circuit authority is not binding precedent in the Fifth Circuit. Plaintiff's reliance on *Karaha Bodas* and its application of the definition of a

fundamentally fair hearing are also misplaced. Like this case, *Karaha Bodas* involved a due process challenge to an arbitration award. That, however, is where the similarities end, as *Karaha Bodas* involved an appeal from an arbitration award governed by The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 9 U.S.C. § 201 ("The Convention").* *Karaha Bodas Co., L.L.C.*, 364 F.3d at 298-99 & n.64.

The court in *Karaha Bodas* explained that "[u]nder Article V(1)(b) [of The Convention], enforcement of a foreign arbitral award may be denied if the party challenging the award was 'not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present [its] case.'" *Id.* at 298 (quoting 9 U.S.C. § 201, Art. V(1)(b)). The court in *Karaha Bodas* further explained that Article V(1)(b) called for the application of the forum state's standards for due process, which in that case, was the United States' standards for due process. *Id.* (citation omitted). It is in this context that the *Karaha Bodas* Court stated:

> A fundamentally fair hearing requires that a party to a foreign arbitration be able to present its case. A fundamentally fair hearing is one that "meets 'the minimal requirements of fairness'—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." The parties must have an opportunity to be heard "at a meaningful time and in a meaningful manner."

*Karaha Bodas Co., L.L.C.*, 364 F.3d at 298-99 (footnotes and citations omitted).

As The Convention at issue in *Karaha Bodas* is inapplicable to this case under the LMRA, so too is the standard of due process applied in that case and advocated by Plaintiff. Even if a similar standard of due process applies, the Fifth Circuit in *Karaha Bodas* made clear that "[t]he right to due process does not include the complete set of procedural rights guaranteed by the Federal Rules of Civil Procedure." *Id.* at 299 (footnotes and citations omitted). In *Karaha Bodas*,

---

* *Generica also involved an arbitration under the Convention. See Karaha Bodas Co., L.L.C.*, 364 F.3d at 301.

**Memorandum Opinion and Order – Page 10**

the Fifth Circuit also clarified as follows regarding an arbitrator's decision to receive evidence and whether such a decision is grounds for vacating an arbitration award:

> "An 'arbitrator is not bound to hear all of the evidence tendered by the parties. . . . [He] [or She] must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments.'" It is appropriate to vacate an arbitral award if the exclusion of relevant evidence deprives a party of a fair hearing. "Every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award. A federal court may vacate an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings."

*Id.* at 300-01 (footnotes and citations omitted). Based on the Seventh Circuit's opinion in *Slaney v. International Amateur Athletic Federation*, 244 F.3d 580, 592 (7th Cir. 2001), the Fifth Circuit reasoned that "parties that have chosen to remedy their disputes through arbitration rather than litigation should not expect the same procedures they would find in the judicial arena." *Karaha Bodas Co., L.L.C.*, 364 F.3d at 300-01 & n.71.

In this case, there is no indication that the Union was deprived of an opportunity to present all arguments and evidence to the arbitrator regarding Defendant's laches claim prior to her making a ruling and issuing the arbitration award. Likewise, there is no indication that the arbitrator's decision to issue the award based on the parties' written submissions, despite Plaintiff's request for a hearing, prejudiced the rights of either party. Further, Plaintiff's conclusory assertion that the arbitrator's decision to proceed without a hearing "evidences misconduct by [the arbitrator] or as least a basic lack of impartiality" is not supported by any evidence or the record. *Id.* Accordingly, Plaintiff's arguments regarding due process and fundamental fairness do not justify vacating the arbitrator's decision.

### C. Decisions in Other Arbitrations

Finally, the Union argues that decisions of arbitrators in other similar grievances initiated by it support its contention that the arbitrator's decision in this case based on laches should be

Memorandum Opinion and Order – Page 11

vacated. Defendant, on the other hand, contends, and this court agrees, that the decisions of arbitrators in other cases that have not been appealed to and are not pending before the undersigned have no bearing on or relevance to the determination of whether the arbitration award in this case should be vacated or confirmed. Thus, this ground does not justify vacating the arbitrator's decision.

**V.      Conclusion**

Having determined that the grounds relied on by Plaintiff do not support its request to vacate the arbitrator's decision, the court **concludes** that no genuine dispute of material fact exists regarding the claims of the parties, and Defendant is entitled to judgment as a matter of law on both parties' claims, including its request to have the arbitrator's award confirmed. Thus, for the reasons explained, the court **grants** Defendant's Motion for Summary Judgment (Doc. 20); and **denies** Plaintiff's Motion for Summary Judgment (Doc. 22). Accordingly, the arbitration award issued by Arbitrator Mattye M. Gandel on August 3, 2020, in American Arbitration Association Case No. 01-19-0004-5336 in Defendant's favor is **confirmed** in all respects, and all claims and relief sought by Plaintiff are **denied** and **dismissed with prejudice**. In accordance with Rule 58 of the Federal Rules of Civil Procedure, judgment will issue by separate document. Any request by Defendant for attorney's fees and related nontaxable expenses will be decided postjudgment in accordance with Federal Rule of Civil Procedure 54(d)(2).

**It is so ordered** this 23rd day of March, 2022.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge